[No. F049966. Fifth Dist. Dec. 6, 2006.]

WAGNER FARMS, INC., et al., Plaintiffs and Appellants, v.
MODESTO IRRIGATION DISTRICT, Defendant and Respondent.

## COUNSEL

Gilmore, Wood, Vinnard & Magness and David M. Gilmore for Plaintiffs and Appellants.

Joy A. Warren, Joel S. Moskowitz; Downey Brand and Jennifer L. Harder for Defendant and Respondent.

## OPINION

DAWSON, J.—Plaintiff farmers appeal an award of costs to defendant Modesto Irrigation District (MID), which the superior court made after denying plaintiffs' petition for a writ of mandate to enforce the California Environmental Quality Act (CEQA).[1] Plaintiffs contend the superior court erred in awarding MID $33,422.24 for preparing the 4,107-page record of proceedings (ROP)[2] because (1) MID impermissibly delegated the preparation of the ROP to consultants, and (2) MID did not submit adequate information from which to determine whether the amounts claimed as costs were necessary and reasonable.

The ROP prepared by MID contains documents that were created after the project was approved. These postapproval documents do not reflect the proceedings that actually occurred, and they are not properly part of the ROP. (*El Morro Community Assn. v. California Dept. of Parks & Recreation* (2004) 122 Cal.App.4th 1341, 1359 [19 Cal.Rptr.3d 445].) Thus, the time spent

---

[1] Public Resources Code section 21000 et seq. All further statutory references are to the Public Resources Code unless otherwise indicated.

[2] We use the statutory term "record of proceedings" (§ 21167.6, subd. (b)(1)) because use of the term "administrative record" might lead readers to erroneously assume that this case involves administrative mandamus and is subject to the cost provisions of Code of Civil Procedure section 1094.5.

preparing them was not a necessary and reasonable cost of preparing the ROP. The minimal factual information submitted by MID was insufficient to justify the unusually high per page cost for preparing the record. Further, the information submitted did not allow the superior court to separate the time MID and its consultants reasonably spent assembling, organizing, and indexing documents that reflected the proceedings actually held from the time they spent with the ROP that furthered their own interests. Accordingly, the award of costs is reversed and the matter remanded to the superior court for further proceedings.

## FACTS AND PROCEEDINGS[3]

MID is a California irrigation district organized under the Irrigation District Law, Water Code section 20500 et seq. MID operates facilities for the generation, transmission, and distribution of electric power and provides electric service within Alameda, Stanislaus, San Joaquin, and Tuolumne Counties.

Plaintiff Wagner Farms, Inc., is a California corporation. Plaintiffs Nita Wagner and Hans Wagner are individuals who own orchards and reside in Stanislaus County.

The lawsuit underlying this appeal arose out of MID's proposal to construct high-voltage electricity transmission lines from a switching station near Westley to MID's substation in Rosemore and its preparation of an environmental impact report (EIR) covering the proposed project. A segment of the route MID selected for the proposed transmission lines affects lands on which orchards owned by plaintiffs are located.

In January 2003, InSite Environmental, a firm with an office in Stockton, California, completed a 161-page environmental feasibility study (Feasibility Study) for MID that analyzed possible route segments for the proposed transmission line. MID used the Feasibility Study to select a preferred corridor for the transmission line.

On June 26, 2003, MID filed a notice of preparation that stated a preferred corridor would be analyzed in an EIR, identified the preferred corridor, and showed that corridor and three alternative corridors on an attached map. A

---

[3] This court, on its own motion, takes judicial notice of the entire appellate record from *Wagner Farms, Inc. v. Modesto Irrigation District* (Sept. 13, 2006, F049311) (nonpub. opn.), which includes a complete copy of the 4,107-page administrative record. (See Evid. Code, § 459 [judicial notice by appellate court].)

draft EIR then "was developed by ECI,[4] MID's engineering consultant for this project, its subcontractor, Robert Scott Environmental Services, and MID staff."

The board of directors of MID approved the draft EIR, and it was distributed on July 14, 2004. The notice of availability for the draft EIR stated that a copy of the draft EIR had been placed at the Stanislaus County Libraries in Modesto, Newman, and Patterson. The notice also stated that a hard copy of the draft EIR could be obtained by mailing $45 to Electrical Consultants, Inc.'s address in Billings, Montana.

The final EIR and a newsletter announcing its availability were distributed on October 27, 2004. The board of directors of MID held a public meeting on November 16, 2004, at which it considered the final EIR, certified it, adopted findings of fact regarding the significant environmental effects and project alternatives, and approved the project.

On December 22, 2004, plaintiffs filed a petition for writ of mandate challenging MID's approval of the project, asserting various violations of CEQA, and requesting declaratory and injunctive relief.

On January 24, 2005, plaintiffs filed a request that MID prepare the ROP.

On April 11, 2005, MID served counsel for plaintiffs with a notice that stated MID's "administrative record regarding the adoption of the Westley-Rosemore 230 kV Transmission Project, Volumes 1 through 18, has been certified and lodged with the court."[5]

By letter dated April 13, 2005, MID provided counsel for plaintiffs with one copy of the 18-volume, 4,107-page ROP. The letter stated that the cost of copying the single set was $685.60[6] and estimated the final cost of preparing the ROP "will be somewhere between $15,000–$18,000."

On April 19, 2005, a senior staff attorney for MID sent counsel for plaintiffs a letter stating that the actual cost for copying and binding a single

[4] ECI refers to Electrical Consultants, Inc. The corporate offices of Electrical Consultants, Inc., are located in Billings, Montana. It also has offices in (1) Salt Lake City, Utah, (2) Tucson, Arizona, and (3) Madison, Wisconsin.

[5] We note, however, that no copy of the certification of the ROP is included in the record on appeal. As a result, this court does not know who signed the certification or the basis for that person's knowledge that allowed him or her to make the certification. (Cf. *Leavitt v. County of Madera* (2004) 123 Cal.App.4th 1502, 1512, fn. 6 [22 Cal.Rptr.3d 101] [discussing carefully crafted document that purported to partially certify the ROP].)

[6] This pretax copying cost equates to about 16.69 cents per page. (Cf. *Friends of the Santa Clara River v. Castaic Lake Water Agency* (2004) 123 Cal.App.4th 1, 8, fn. 9 [19 Cal.Rptr.3d 625] (*Friends*) [average cost to copy ROP was approximately 16.93 cents per page].)

set of the ROP was $736, not the $685.60 indicated in the earlier letter. It appears the increase in amount was due to the sales tax charged by the copying service. In addition, the April 19th letter stated: "The total cost of gathering, organizing and indexing the record is **$31,213.44**. This amount includes only the time spent by the District's Environmental Compliance Officer in accumulating, organizing and indexing the record; the time spent by the District's consultants who prepared the environmental impact report in gathering, copying, and shipping documents in their files and in reviewing the record for completeness and accuracy; and the cost to copy/bind the original administrative record lodged with the court."

The value of MID's environmental compliance officer's time was stated as $8,026.68 based on "114 regular hours at a weighted rate of $52.30[,] [¶] 26.25 hours at a weighted rate of $59.84[, and] [¶] 5.5 overtime hours at a weighted rate of $89.76 . . . ." The cost of Electrical Consultants, Inc.'s work on the ROP was reported as $22,450.76.

MID's letter to counsel for plaintiffs included a copy of an April 13, 2005, letter that Crystal Kuntz, an assistant environmental coordinator at Electrical Consultants, Inc., sent to MID. Her letter summarized the work Electrical Consultants, Inc., performed in preparing the ROP and reported the charges for each month (Feb., Mar. & Apr.) in four categories: (1) environmental coordinator services, (2) assistant environmental coordinator services, (3) copying and shipping,[7] and (4) secretarial preparation of materials including expenses. Though monthly project invoices are mentioned in Ms. Kuntz's letter, none are included in the appellate record and thus we must assume that none were provided to the court below. (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364 [1 Cal.Rptr.3d 726] ["if it is not in the record, it did not happen"].)

In the fall of 2005, plaintiffs lost their CEQA case and a judgment was filed in favor of MID. In a separate appeal, this court concluded that the EIR for the project complied with CEQA and affirmed the judgment. (*Wagner Farms, Inc. v. Modesto Irrigation District, supra,* F049311.)

In late November 2005, MID filed a memorandum of costs totaling $34,077.95, which included a $33,422.24 claim for preparing and filing the

---

[7] Electrical Consultants, Inc., charged MID a total of $1,706.85 for copying and shipping (February, $1,007.84; March, $555.88; April, $143.13), which is roughly half of the amount billed by the printing company for photocopying and binding five copies of the completed ROP. The information submitted does not identify (1) how many pages Electrical Consultants, Inc., sent to MID; (2) how many of those pages ultimately became part of the record; (3) the per page amount Electrical Consultants, Inc., charged for the copies; or (4) the amount attributable to shipping.

ROP. An attachment to MID's memorandum of costs categorized the cost of preparing and filing the ROP as environmental compliance officer ($8,026.68), consultant's environmental coordinator services ($22,450.76), and copying and binding ($3,680.80 less $736 paid by plaintiffs). The consultant's charges were supported with a copy of the April 13, 2005, letter from Electrical Consultants, Inc., to MID. The copying and binding costs were supported with a copy of a two-page invoice from Dittos, a printing company located in Modesto, California, that produced five copies of the ROP.

Plaintiffs filed a motion to tax costs. They argued that MID impermissibly delegated the preparation of the ROP to its consultants, that the amounts requested for preparation of the ROP were not adequately supported, and that the exorbitant amounts spent were not necessary or reasonable. Plaintiffs supported the motion with a declaration of counsel, which attached as exhibits the April 13 and 19, 2005, letters from MID.

MID's opposition was supported by a declaration of an in-house attorney that stated the superior court requested a temporary replacement copy of the ROP and that MID submitted the requested copy to the court. No other declaration or supporting evidence to substantiate the cost that MID claimed for time spent by MID's environmental compliance officer in accumulating, organizing, and indexing the record was provided with the opposition.

In their reply to MID's opposition, plaintiffs argued that the lack of detail supporting the hours spent on the ROP was striking and that MID failed to carry its burden of showing the costs claimed were reasonable and necessary.

The superior court requested supplemental briefing addressing (1) whether plaintiffs' challenge to the costs of preparing the ROP was barred by laches because plaintiffs never requested an estimate of cost before the ROP was prepared, (2) whether certain charges were permitted, and (3) the applicability of the principles set forth in *Hayward Area Planning Assn. v. City of Hayward* (2005) 128 Cal.App.4th 176 [26 Cal.Rptr.3d 783] (*Hayward*).

The parties submitted supplemental briefs and a hearing was held on February 23, 2006. The written ruling filed by the superior court on February 23, 2006, includes the following: "As set forth in *Hayward Area Planning Association vs. City of Hayward*[, *supra*,] 128 Cal.App.4th 176, M.I.D. filed the cost bill in its own name and assumed responsibility for the costs incurred. Thus, if M.I.D. had not been the prevailing party, M.I.D. would have borne the entire costs of preparing the record. This is not a case where M.I.D. delegated the task to a real party in interest. Rather, M.I.D. was required to use the service of its outside consultants. See *Protect Our Water vs.*

*County of Merced*[, *supra*,] 110 Cal.App.4th 362, 373; *cf., Citizens for Quality Growth vs. City of Mt. Shasta* (1988) 198 Cal.App.3d 433. The Court finds M.I.D.'s actions are reasonable in preparing the record. [¶] The Motion to Tax Costs is **DENIED**." (Underscoring omitted.)

On March 6, 2006, plaintiffs filed a notice of appeal from the order denying their motion to tax costs and the related judgment in favor of MID.

## DISCUSSION

### I. *Traditional, Not Administrative, Mandamus Was Sought Below*

Plaintiffs' CEQA petition sought a writ for traditional mandamus because the challenged action—approval of a transmission line project—was quasi-legislative in character. (See *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 566–567 [38 Cal.Rptr.2d 139, 888 P.2d 1268] [traditional and administrative mandamus in CEQA proceedings].) As a petition for traditional mandamus, it was subject to (1) the procedure for traditional mandamus set forth in Code of Civil Procedure section 1085 and (2) review under the standards contained in section 21168.5. (*County Sanitation Dist. No. 2 v. County of Kern* (2005) 127 Cal.App.4th 1544, 1578 [27 Cal.Rptr.3d 28]; see Robie et al., California Civil Practice—Environmental Litigation (2006) § 8:31 [vast majority of proceedings challenging agency action for noncompliance with CEQA are traditional mandamus reviewed under § 21168.5].)

Stated in the obverse, plaintiffs' CEQA petition did not challenge agency action that was adjudicative or quasi-judicial and, thus, the writ sought cannot be characterized as one for administrative mandamus. When a petition for administrative mandamus is sought in a CEQA proceeding, it is reviewed under the standards contained in section 21168 and is subject to the procedures for administrative mandamus set forth in Code of Civil Procedure section 1094.5. (See *Western States Petroleum Assn. v. Superior Court, supra,* 9 Cal.4th at pp. 566–568.)

The distinction between sections 21168 (administrative mandamus) and 21168.5 (traditional mandamus) may be inconsequential when describing the abuse of discretion standard under which the agency action is reviewed. (See generally Remy et al., Guide to the Cal. Environmental Quality Act (CEQA) (10th ed. 1999) pp. 595–598 [distinguishing relationship between § 21168.5 and Code Civ. Proc., § 1085 from relationship between § 21168 and Code Civ. Proc., § 1094.5].) The distinction does matter, however, when it comes to identifying the rules of law applicable to an award of costs.

We note the distinction between traditional mandamus and administrative mandamus in CEQA proceedings to explain why we have not relied upon the provisions concerning costs set forth in Code of Civil Procedure section 1094.5.[8] (See 2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2006) § 23.41, p. 1173 [Code Civ. Proc., § 1094.5 contains several unique procedural provisions that ordinarily do not apply to CEQA cases reviewed under § 21168.5].)

II. *Award of Costs for Preparing the ROP in a Traditional Mandamus Case*

A. *Statutory Provisions*

The last sentence of section 21167.6, subdivision (b)(1) provides that the "parties shall pay any reasonable costs or fees imposed for the preparation of the record of proceedings in conformance with any law or rule of court." This language leads us to the general rules applicable to the award of costs, which are set forth in Code of Civil Procedure sections 1032, 1033 and 1033.5.

■ First, except as otherwise expressly provided by statute, the party who prevails in any action or proceeding "is entitled as a matter of right to recover costs." (Code Civ. Proc., § 1032, subd. (b).)

■ Second, Code of Civil Procedure section 1033.5, subdivision (a) contains a list of items specifically allowed as recoverable costs, and subdivision (b) contains a list of items that "are not allowable as costs, except when expressly authorized by law . . . ." An item neither specifically allowable under subdivision (a) nor prohibited under subdivision (b) may be allowed or denied in the discretion of the court if certain requirements are satisfied. (Code Civ. Proc., § 1033.5, subd. (c)(4).) In particular, the item "shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation" and "shall be reasonable in amount." (Code Civ. Proc., § 1033.5, subd. (c)(2), (3).) The requirement that a recoverable cost be reasonable in amount parallels the requirement in subdivision (f) of section 21167.6 that the party preparing the record of proceedings "shall strive to do so at reasonable cost in light of the scope of the record."

B. *Principles from Case Law*

■ The foregoing statutory rules are supplemented by the following judicially created rules: "[I]f the items on a verified cost bill appear proper

---

[8] An example of such a provision is the last sentence of subdivision (a) of Code of Civil Procedure section 1094.5, which states: "If the expense of preparing all or any part of the record has been borne by the prevailing party, the expense shall be taxable as costs."

charges they are prima facie evidence that the costs, expenses and services therein listed were necessarily incurred. (*Oak Grove School Dist.* v. *City Title Ins. Co.* [(1963)] 217 Cal.App.2d 678, 698 [32 Cal.Rptr. 288]; *Decoto School Dist.* v. *M. & S. Tile Co.* [(1964)] 225 Cal.App.2d 310, 316–317 [37 Cal.Rptr. 225].) However, where the items are properly objected to, they are put in issue, and the burden of proof is upon the party claiming them as costs. (*Oak Grove School Dist.* v. *City Title Ins. Co., supra,* at p. 698.)" (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 624 [134 Cal.Rptr. 602].)

"Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion. [Citation.] However, because the right to costs is governed strictly by statute [citation] a court has no discretion to award costs not statutorily authorized. [Citations.]" (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774 [23 Cal.Rptr.2d 810].)

### C. Standards Applicable to Preparation of Record in CEQA Proceedings

Based on the provisions of section 21167.6, the provisions of the Code of Civil Procedure concerning the award of costs to the prevailing party, and the principles stated in case law, we conclude that the prevailing party in a CEQA proceeding involving traditional mandamus may recover as costs the amounts it reasonably and necessarily incurred in preparing the ROP. (*River Valley Preservation Project v. Metropolitan Transit Development Bd.* (1995) 37 Cal.App.4th 154, 181 [43 Cal.Rptr.2d 501] (*River Valley*) [subject to necessary and reasonable standard and review for abuse of discretion, costs for preparing record, as well as transcribing and copying, may be recovered in CEQA proceeding].)

In reviewing a case for an abuse of discretion, this court has recognized that "[i]t is well established that '[t]o exercise the power of judicial discretion, all material facts and evidence must be both known and considered, together with legal principles essential to an informed, intelligent and just decision.' [Citations.]" (*Oldham v. California Capital Fund, Inc.* (2003) 109 Cal.App.4th 421, 430 [134 Cal.Rptr.2d 744].) Where a party making a request fails to present material information that it controls, the record may lack facts essential to support the lower court's ruling in that party's favor. (E.g., *id.* at pp. 430–435.)

### III. Amounts Awarded to Prepare ROP's in Other Cases

#### River Valley and MID's Proportionality Argument

In both its opposition to the motion to tax costs filed with the lower court and its appellate brief filed here, MID uses information from another CEQA

case to support its claim that $33,422.24 is a reasonable and necessary cost for preparing the ROP here. It is telling, according to MID, that "in *River Valley*, the court awarded over $10,000 for a 6-volume A[dministrative] R[ecord]; here, MID requests approximately $30,000 in costs for an 18-volume AR. (*See River Valley, supra*, 37 Cal.App.4th at 181.)"

We agree with MID's premise that comparing the amount claimed to prepare an ROP with the amount awarded in other cases can tell a court something about the request under review. Prior experience with cost awards is part of the information used by courts in forming an initial impression of whether the amount requested is in the ballpark of what is reasonable. (Cf. *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499–500 [213 Cal.Rptr. 256, 698 P.2d 159] [using ballpark metaphor to describe a proportionality analysis done to determine reasonableness of offer to compromise under Code Civ. Proc., § 877.6].) Though this initial impression may not determine the ultimate outcome, it may affect the amount of scrutiny the details underlying the request receive. To illustrate the point about initial impressions, the amount of detail a prevailing party must submit to adequately support a request that equates to $20 per page of ROP will be greater than the detail needed to support a request for 20 cents per page.

We do not agree, however, with MID's use of a cost-per-*volume* approach to determine proportionality. We will compare costs on a per page basis because the size of a volume can vary from case to case and volume to volume.

In *River Valley*, the defendant was awarded $10,194.05 for preparing an ROP that consisted of "nearly 4,000 pages of documents spanning 10 years." (*River Valley, supra*, 37 Cal.App.4th at p. 180.) The amount awarded equates to approximately $2.55 per page. In comparison, MID has claimed $33,422.24 for preparing an ROP that consisted of 4,107 pages. The amount claimed equates to approximately $8.14 per page. Consequently, the ROP in this case was only slightly larger than the ROP in *River Valley* and it cost over three times as much to prepare. Thus, we are not convinced by MID's contention that its claim for the costs of preparing the ROP was in proportion to and thus supported by the costs awarded in *River Valley*.

A more recent case in which an appellant challenged an award of costs claimed for preparing an ROP involved an ROP that was organized into 37 three-ring binders and consisted of 17,766 pages. (*Friends, supra*, 123 Cal.App.4th at pp. 7–8 [Ct. App., Fifth Dist.].) In that case, the total costs awarded the agencies by the superior court was $62,044.78 and, of this amount, $49,203.77 was attributable to an invoice from a copying company

that Bates stamped and produced 16 photocopies of the record.[9] (*Friends*, at pp. 7–8.) Assuming that all of the costs awarded, other than those that were attributable to copying and Bates stamping, were incurred to prepare and organize the ROP for copying, then that ROP was prepared and organized for less than 73 cents per page.[10] When the copying charges of 17 cents per page are added to this total, one set of the ROP was produced for approximately 90 cents per page.

In *Hayward, supra*, 128 Cal.App.4th 176, the total number of pages for which the superior court awarded costs of $20,360 is not specifically identifiable, but the ROP appears to have been at least 7,810 pages. (*Id.* at p. 179.) Thus, the superior court awarded less than $2.61 per page for the cost of preparing the record in that case.

Consequently, it appears that MID's reliance on *River Valley* for a favorable comparison to the approximately $8.14 per page MID requests is misplaced. Because MID's claim for costs for preparing the ROP in this case appears disproportionately high when compared to the costs awarded for the preparation of ROP's in other cases, the comparison suggested by MID provides no support for its claim.

The items claimed remain "in issue" as that phrase is used in *Ladas v. California State Auto. Assn., supra*, 19 Cal.App.4th at page 774, and MID has the burden of proving the items were "reasonably necessary to the litigation." (*Ibid.*)

IV. *Costs of Photocopying and Binding*

A. *Number of Copies*

In their papers filed in the superior court, plaintiffs argued that "five copies [of the ROP] were made although only three, at most, should have been required, one for the court, one for MID and one for [plaintiffs]."[11]

MID's opposition to the motion to tax costs asserted that "MID had five copies produced: one copy for the Court, one copy for [plaintiffs], one copy for MID, plus one copy for the environmental consultant and one copy for

---

[9] The appellants in that case won a reversal of the judgment and, therefore, the issue concerning the reasonableness of the costs incurred was not addressed by this court. One argument raised by the appellants was that 16 copies of the ROP were excessive.

[10] This amount is calculated as follows: $62,044.78–$49,203.77 = $12,841.01. $12,841.01÷17,766 pages = $0.7228/page.

[11] Counsel for plaintiffs paid $736 for the copy of the ROP that MID delivered in April 2005. The amount of this payment was subtracted from the amount MID claimed as costs.

outside counsel." MID argued that all five copies "were necessary to the conduct of the litigation, and are therefore recoverable."

The declaration of MID's in-house counsel only explains why the superior court received a copy of the ROP after the original ROP was lodged with the court. The declaration does not state a copy was actually delivered to MID's outside counsel or its consultant and does not address why outside counsel and the environmental consultant needed their own copies. Nor does the record contain a declaration from the environmental consultant or an attorney from the outside law firm that provides a factual basis for why it was necessary and reasonable for them to have separate copies of the ROP.

Nevertheless, documents filed with the superior court indicate that MID's outside counsel had its offices in Sacramento. Also, the ROP indicates that the environmental consultant had its offices outside the state. In these circumstances, the superior court did not abuse its discretion in determining that the creation of five copies of the ROP was "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (Code Civ. Proc., § 1033.5, subd. (c)(2).) Although the superior court also could have determined that the copies for outside counsel and the consultant were merely convenient or beneficial to MID's preparation of its side of the litigation, the determination falls within the range subject to the superior court's discretion. Thus, we will not overturn the determination that the expense of making five copies was necessary and reasonable.

## B. *Cost of Making Each Copy*

The invoice from Dittos printing company in Modesto indicates that (1) five copies of the ROP were made and bound, (2) it charged $3,427.99 plus tax of $252.81 to complete the job, and (3) a significant number of oversized maps were involved. The ROP itself is evidence of the oversized maps and the additional labor needed to fold and assemble the maps in nine-inch by 12-inch envelopes cut down to hold the oversized documents. Pages 4084 through 4107, inclusive, of the ROP are oversized maps and drawings that are folded and placed in the envelopes and bound together to create volume 18 of the ROP.

The per page cost for photocopying and binding is adequately supported by the invoice from the copy company. The charges of $3,427.99 plus tax of $252.81 equate to a posttax cost per page of 17.92 cents. (Cf. *Friends, supra*, 123 Cal.App.4th at p. 8, fn. 9 [average per page cost of photocopying ROP was approximately 16.93 cents].) Plaintiffs have not presented any evidence that shows the copying could have been done less expensively by a different copying service or themselves. (See *Leavitt v. County of Madera, supra*, 123

Cal.App.4th at p. 1511, fn. 5.) In light of the invoice that reflects the actual costs incurred and the absence of any evidence that the job could have been done for less, we conclude the superior court acted within its discretion in awarding MID the full amount charged by the printing company, less plaintiffs' prior payment for the copy delivered to them.

## V. *Cost of Labor to Assemble and Organize ROP*

### *Contentions of the Parties*

Plaintiffs argue that MID failed to present enough detailed information about the time expended by its own staff member and the employees of the consultant to carry its burden of proving the time spent and the rates charged were reasonable and necessary. For at least the reasons that follow, we agree.

### 1. *Time spent preparing MID's case*

Page 4106 of the ROP is an oversized map created using an aerial photograph of the area that includes the Rosemore substation, plaintiffs' land, and part of an irrigation canal known as "Lateral No. 4." Five potential route segments for the proposed transmission line are depicted on the map. The map's legend indicates that the scale used was one inch equals 400 feet and that it was drawn on March 18, 2005.

Page 4107 of the ROP is an enlargement of the aerial photograph contained on page 4106 and depicts the portion of Lateral No. 4 where it runs east-west along the north side of Maze Boulevard and then crosses under Maze Boulevard just to the east of its intersection with Pauline Avenue and continues west-southwest. A number of building sites abut Lateral No. 4 in this area. The scale of the enlargement is one inch equals 100 feet. It also states it was drawn on March 18, 2005.

The appellate record thus reveals that the documents included in the ROP at pages 4106 and 4107 were created *after* the board of directors of MID approved the proposed project and the final EIR in November 2004—in fact, they were created after plaintiffs filed their petition for writ of mandate on December 22, 2004. The documents, thus, are not a reflection of the agency *proceedings* as they actually happened. As documents created after the proceedings were over, they cannot be considered a proper part of the "record of proceedings." (See § 21167.6, subd. (e) [list of items in record of

proceedings]; *El Morro Community Assn. v. California Dept. of Parks & Recreation, supra*, 122 Cal.App.4th 1341.)[12]

Because the documents were not a part of the actual proceedings that led to the approval of the project and therefore are not properly part of the ROP, it necessarily follows that MID's claim for costs in preparing the ROP was excessive. Furthermore, given the scant amount of evidence regarding how the time claimed by MID was spent, there is no basis in the record for separating the time necessary for preparation of the ROP and the time claimed by MID that went beyond that merely related to preparing the ROP.

■ We find nothing in the record of the proceedings relating to plaintiffs' motion to tax costs to indicate that the trial court was aware the ROP included documents it should not have, or to indicate the trial court was aware the costs claimed by MID for preparation of the ROP might include an element based on these improper inclusions in the ROP. Thus, it appears that the trial court was led into an abuse of discretion.

### 2. *The remedy*

We cannot segregate the time appropriately attributable to preparation of the ROP and the time that was not necessary to that purpose. Neither could the superior court, on the record as it stands, perform that task. Therefore, and because the matter of costs is entrusted to the discretion of the superior court, we will reverse the denial of the motion to tax costs and remand the matter to the superior court for further proceedings. (See *Fennessy v. DeLeuw-Cather Corp.* (1990) 218 Cal.App.3d 1192 [267 Cal.Rptr. 772] [award of costs to the one defendant out of six who prevailed on motion for summary judgment reversed; matter remanded to determine costs incurred on prevailing defendant's behalf and those incurred on behalf of other defendants]; see also *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359 [33 Cal.Rptr.3d 644] [abuse of discretion in award of attorney fees; matter remanded for further proceedings].)

---

[12] These two aerial photographs were cited six times by MID in its respondent's brief in the appeal of the underlying judgment. For example, page 2 of MID's brief stated: "Finally, the Administrative Record demonstrates that [plaintiffs'] preferred alignment would require removal of at least one, and perhaps two, existing homes and their residents. (2R/360–61, 369–70, 385, 396–97, 400; *see* 18R/4106–107 (map showing the path of Canal Route alignment running through existing residences).)"

Another parenthetical after a citation in the brief to the two documents states, "photograph showing line running through orchards."

The purpose of the aerial photographs thus appears to have been to provide support for MID's arguments that it appropriately decided not to put the transmission line in the right-of-way it owned along an irrigation canal known as Lateral No. 4.

We also commit to the discretion of the superior court the question whether MID is given a second chance to submit the admissible evidence that will be essential for it to carry its burden of proof regarding the necessity and reasonableness of the time claimed for preparing the ROP. The superior court might find there is good cause for giving MID a second bite at the apple.[13] Alternatively, it might find there are insufficient reasons to reopen the record and, accordingly, might decide the matter on burden of proof grounds. In any event, that question will be answered by the superior court in the first instance.

## VI. *Delegation of Preparation of ROP*

In *Hayward, supra,* 128 Cal.App.4th 176, the project developer filed a memorandum of costs that included a request for costs incurred in preparing the ROP. The plaintiffs in that case had reached an agreement with the public agency that the public agency would prepare the record. The agreement was based on the public agency's estimates of the costs. (*Id.* at p. 179.) Without notifying the plaintiffs or obtaining their consent, the public agency delegated the preparation of the ROP to the developer. The Court of Appeal reversed the superior court's partial award of the costs claimed by the developer for preparing the ROP and ruled that an award of any such costs to the developer was inconsistent with the provisions of CEQA. (*Hayward,* at p. 186.)

We conclude that MID did not impermissibly delegate the preparation of the ROP in this case and that the present situation is distinguishable from *Hayward.* Here, MID is the developer of the project. Further, MID filed the memorandum of costs and the costs claimed were represented as either (1) time spent by an employee of MID or (2) liabilities MID incurred for services its environmental consultant provided and billed to MID for time spent gathering, organizing, and reviewing documents included in the ROP. Thus, as determined by the superior court, there was no delegation that contravened the provisions of section 21167.6.

---

[13] If the superior court were to reopen the hearing and allow MID the opportunity to present evidence, MID would be required to provide the superior court with sufficient information to allow it to exercise its discretion. (See *Oldham v. California Capital Fund, Inc., supra,* 109 Cal.App.4th at pp. 430–435.) Such evidence would not be sufficient if it did not show how the time of MID's employee was spent, how the hourly rates used were calculated, how the time of the consultant's employees was spent, and the hourly rates the consultant charged for each employee. One purpose for showing how the time was spent is to allow the superior court to segregate the time properly spent preparing the ROP from time spent on other purposes. Inclusion of the certification of the ROP, assuming it was certified in writing, will be essential to show that someone actually reviewed the ROP and determined the documents qualified as items included in the ROP under section 21167.6, subdivision (e).

## DISPOSITION

The order denying the motion to tax costs is reversed. The matter is remanded to the superior court for further proceedings consistent with the views expressed in this opinion. Plaintiffs shall recover their costs on appeal.

Harris, Acting P. J., and Cornell, J., concurred.

A petition for a rehearing was denied January 5, 2007, and the opinion was modified to read as printed above.