73 Cal.Rptr.3d 512 (2008)
160 Cal.App.4th 1426
ST. VINCENT'S SCHOOL FOR BOYS, CATHOLIC CHARITIES CYO, Plaintiff and Appellant,
v.
CITY OF SAN RAFAEL, Defendant and Respondent.
No. A116690.
Court of Appeal of California, First District, Division Three.
March 18, 2008.
Stephen L. Kostka, Julie Jones, Nadia L. Costa, Bingham McCutchen L.L.P., Walnut Creek, for Appellant St. Vincent's School For Boys, Catholic Charities CYO.
Gary T. Ragghianti, Clark E. Guinan, City of San Rafael, San Rafael, Michael Von Loewenfeldt, Kerr & Wagstaffe LLP, San Francisco, Tiffany K. Wright, Remy, Thomas, Moose and Manley, LLP, Sacramento, Lee C. Rosenthal, Barbara E. Kautz, Goldfarb and Lipman, Oakland, for Respondent City of San Rafael.
Certified For Partial Publication.[*]
HORNER, J.[**]
On appeal from a judgment denying its petition for writ of mandate, plaintiff and appellant St. Vincent's School for Boys, Catholic Charities CYO ("St. Vincent's") contends: (1) defendant and respondent City of San Rafael ("the City") unlawfully *513 amended the provisions of its general plan to delete plans for the future annexation of property owned by St. Vincent's; (2) the City* violated the California Environmental Quality Act (CEQA)[1] by certifying an inadequate environmental impact report (EIR) for the revisions to the general plan; (3) the housing element outlined in the City's amended general plan is legally deficient; and, (4) the trial court erred by awarding the City costs for document retrieval. We affirm the judgment.

FACTUAL & PROCEDURAL BACKGROUND
St. Vincent's owns 835 acres of unincorporated land in the County of Marin. The property lies to the north of the City of San Rafael, abutting the southern boundary of the City of Novato, and is set to the east of Highway 101 between it and the San Pablo Bay. The property is separated from the northern boundary of the City of San Rafael by the Silveira property, another tract of unincorporated lands which also sits between Highway 101 and the San Pablo Bay.
For many years the City and the County of Marin ("County") cooperated in planning for the future use and development of the St. Vincent's and Silveira properties (jointly, "the Properties"). Although the Properties are physically located within the unincorporated area of the County, for planning purposes they were identified by the Local Agency Formation Commission (LAFCO) as within the City's Sphere of Influence and Urban Service Area. Policies in earlier versions of the City's general plan and the Marin Countywide Plan anticipated that the Properties would be annexed to the City prior to or concurrent with the issuance of development permits.
The City's General Plan 2000, adopted in 1988, set forth detailed policies for the Properties describing environmental concerns and identifying development potential of up to 2,100 units. In 1998, the City and the County decided to enter a nonbinding Memorandum of Understanding to work cooperatively on a process to prepare recommended amendments to the City's general plan and the Marin Countywide Plan regarding the Properties. The City and County appointed a 16-member advisory Task Force, which included representatives from interest groups throughout the County, in order to prepare recommended general plan amendments for the City and County. Over a period of 20 months, the Task Force held meetings and study sessions with various community groups before presenting recommendations to the City in May 2000. The Task Force report stated that the appropriate level of development for the properties would be determined through subsequent environmental impact analysis of impacts on environmental characteristics as well as on traffic on Highway 101 and local streets. However, the report recommended the range of possible development for the Properties at between 800 and 1,500 units, reduced to 500 units with the purchase of development rights. The City accepted the Task Force recommendations by resolution dated May 3, 2000, and forwarded them to the General Plan Steering Committee for incorporation into the general plan update.
On March 18, 2002, Shapell Industries and St. Vincent's submitted applications to the City for development of the St. Vincent's property alone, including a specific request for annexation of the St. Vincent's property. The proposed development included 766 residential units, 120,000 feet of office space and additional retail space. The City sent a Notice of Preparation of a draft EIR on the proposed project to nearby *514 property owners, as well as other local groups and agencies. In response, the City received about 50 letters from agencies and individuals, including the City of Novate and the County of Marin, identifying concerns with the proposal, including impacts on traffic and transit and the fact that the proposal did not proceed in conjunction with a plan for the Silveira property.
On April 7, 2003, the City Council passed Resolution 11288, denying the application by Shapell Industries/St. Vincent's for annexation and prezoning. Resolution 11288 acknowledged that "for many years, the City, County and the Marin County [LAFCO] have identified the [Properties] ... as located within the City's Sphere of Influence," and that the, city's "General Plan 2000, adopted in 1988, set forth policies for [the Properties] ... identifying [their] development potential." The resolution found, however, that circumstances that may have favored prezoning and developing the St. Vincent's Property had changed since adoption of General Plan 2000 and acceptance of the Task Force recommendations. The resolution stated that any such future development had always been contingent upon the completion of infrastructure improvements to address roadway and sewer capacity constraints. These included road improvements such as extension of the McInnis Parkway and completion of the Lucas Valley Road/Smith Ranch Road interchange, as well as construction of a parallel arterial to Highway 101 to provide additional north/south capacity to Novate, as well as for police and fire emergency access.[2] Such improvements had not been made, the resolution noted, while at the same time traffic problems on Highway 101 had worsened, problems which the proposed development would compound. Additionally, the resolution noted that in the two years since the Task Force recommendations were adopted "public opposition to developing the area has grown" and a majority of the Marin County Board of Supervisors had expressed opposition to the proposed level of development for the St. Vincent's property. The resolution also noted that the St. Vincent's property "is not contiguous to the City, a necessity for any annexation."
Resolution 11288 also found that disapproving prezoning and annexation for the St. Vincent's proposal is consistent with General Plan 2000 because nothing in the plan "affirmatively requires the City to actively pursue or to approve development of the [Properties]." Rejection of the proposal maintains the status quo, the resolution found, because the Properties are not currently zoned by the City but are currently zoned A-2 under the County's Zoning Ordinance. The resolution noted that the "County's zoning designation will remain in place ... [and the City's rejection of the proposal] will in no way preclude future development of the property in a manner that is consistent with the County's General Plan."
The City had earlier signaled a possible change of tack on the annexation of the properties, reflected in Resolution No. 11237, which the City Council unanimously passed on January 13, 2003. Resolution No. 11237 noted that whereas the City accepted the Task Force proposals for the properties in May 2000, recent public comments and position statements by County Supervisors have advocated more limited development and a greater planning role for the County in any such development. The resolution also noted that "the County has substantial involvement in the annexation *515 process and considerable influence in connection with any ultimate decision respecting annexation of [the Properties] to the City as well as being a principal participant in the necessary negotiation of a tax sharing agreement with the City and through its participation on LAFCO possesses the ability to make annexation infeasible following a lengthy land use entitlement process in the City that may likely require the City's defense of lawsuits and public referenda." Therefore, under the resolution, the City Council directed staff "to prepare proposed amendments to the City's General Plan relating to the [Properties], indicating the City's determination not to annex or to serve these lands and directing that LAFCO remove them from the City's Sphere of Influence and Urban Service area as appropriate and to bring such proposed amendments to the Planning Commission and City Council for public hearing and consideration for adoption. In doing so staff is directed to include policies continuing the City's long advocacy that any future development of [the Properties] in the County should provide for maximum creation of workforce housing while protecting unique environmental features and habitat values and providing a fair economic use of these lands for their owners. The City Council further directs the General Plan 2020 Steering Committee also consider such policies in their preparation of a draft General Plan 2020 consistent with such Council direction."
Subsequently, General Plan 2020 was developed and adopted by the City Council in a resolution passed on November 15, 2004. General Plan 2020 did not provide for the future annexation of the Properties. Accordingly, in the adopting resolution the City Council instructed staff "to formally request that the Marin [LAFCO] initiate proceedings to remove the [Properties] from the City's Sphere of Influence." The City Council found that the 2020 Plan is consistent with the intent of the Marin Countywide Plan to concentrate development in three environmental corridors, and which designates San Rafael within the "City-Centered Corridor." The Council also found that Plan 2020 is consistent with Smart Growth principles focusing on the development of community centers, including the Downtown area and North San Rafael Town Center, appropriate design, mixed uses and balanced transportation planning.
St. Vincent's filed its complaint and petition for writ of mandate on December 13, 2004. After demurrers by the City, St. Vincent's filed the operative, second amended complaint on May 25, 2005. The complaint alleges: "The City abandoned the opportunity to have a substantial amount of affordable housing actually built [on the St. Vincent's property] within its expanded borders because it assumed that the political winds had shifted. Instead of allowing the development at St. Vincent's that the multiple City general plans and the Advisory Task Force anticipated, the City proposed and later adopted amendments to its General Plan that reverse land use policies that have been in place for decades." The complaint asserted various causes of action, including violations of CEQA and violations of state planning and zoning law, and sought a writ of mandate declaring the City's General Plan 2020 invalid and void ab initio.
A hearing on the petition for writ of mandate was held on September 19, 2006. On November 14, 2006, the trial court issued an order concluding that the City "did not act in an arbitrary and capricious manner in deciding ... to approve its General Plan 2020 and in its earlier decision not to pursue annexation of [the St. Vincent's property]." In addition, the court found that the City did not violate CEQA or state planning laws in approving Plan *516 2020. Consequently, the court denied St. Vincent's petition for writ of mandate. Judgment in favor of the City, including costs of suit, was entered on November 29, 2006. St. Vincent's filed a timely notice of appeal from the judgment on January 12, 2007. Subsequently, the trial court issued an order awarding the City costs in the amounts of $4,030.12 (for filing fees and court copy of Administrative Record) and $26,362.50 (Information Technology Division fees for costs of retrieving emails).

Discussion

A.-C.[***]

D. Costs
The trial court awarded the City costs "listed as Information Technology Division fees in the amount of $26,362.50." The trial court stated: "These costs are described as time spent in the email search and production efforts of City programmers or analysts, calculated at a `fully burdened' rate. After argument [on St. Vincent's motion to tax costs], the court again reviewed the record in this case and can recall petitioner's insistence that the record be augmented with the parties' email exchanges. The court will allow the staff time spent in this cumbersome retrieval process, but will not award the attorneys' fees claimed as attributable, to these efforts." St. Vincent's does not dispute that the City incurred these costs, or that they were reasonable and necessary for the litigation, nor does it challenge the rates at which the costs were assessed. Rather, St. Vincent's contends that the award of costs is barred as a matter of law both by Code of Civil Procedure 1033.5 and by the Public Records Act.

1. Statutory Framework
Public Resources section 21167.6 (hereafter "section 21167.6") provides that at the time at the time a CEQA action is filed, "the plaintiff or petitioner shall file a request that the respondent public agency prepare the record of proceedings relating to the subject of the action or proceeding. The request, together with the complaint or petition, shall be served personally upon the public agency not later than 10 business days from the date that the action or proceeding was filed." (§ 21167.6, subd. (a).) Thereafter, "[t]he public agency shall prepare and certify the record of proceedings not later than 60 days from the date that the request specified in subdivision (a) was served upon the public agency. Upon certification, the public agency shall lodge a copy of the record of proceedings with the court and shall serve on the parties notice that the record of proceedings has been certified and lodged with the court. The parties shall pay any reasonable costs or fees imposed for the preparation of the record of proceedings in conformance with any law or rule of court." (§ 21167.6, subd. (b)(1) [italics added].) However, "[t]he plaintiff or petitioner may elect to prepare the record of proceedings or the parties may agree to an alternative method of preparation of the record of proceedings, subject to certification of its accuracy by the public agency, within the time limit specified in this subdivision." (§ 21167.6, subd. (b)(2).)
The reference to "reasonable costs or fees ... in conformance with any law or rule of court" in section 21167.6, subdivision (b)(1), "leads us to the general rules applicable to the award of costs, which are set forth in Code of Civil Procedure sections 1032, 1033 and 1033.5.[¶] First, except as otherwise expressly provided by statute, the party who prevails in any action *517 or proceeding `is entitled as a matter of right to recover costs.' (Code Civ. Proc, § 1032, subd. (b).)" (Wagner Farms, Inc. v. Modesto Irrigation Dist. (Wagner Farms) (2006) 145 Cal.App.4th 765, 773, 52 Cal.Rptr.3d 683.) And in further reference to costs, section 21167.6 provides that "[i]n preparing the record of proceedings, the party preparing the record shall strive to do so at reasonable cost in light of the scope of the record." (§ 21167.6, subd. (f).)

2. Analysis
Based on the above provisions of section 21167.6 and the Code of Civil Procedure provision awarding costs to the prevailing party, the court in Wagner Farms, supra, concluded that "the prevailing party in a CEQA proceeding ... may recover as costs the amount it reasonably and necessarily incurred in preparing the ROP [Record of Proceedings]." (Wagner Farms, supra, 145 Cal.App.4th at p. 774, 52 Cal. Rptr.3d 683.) St. Vincent's, however, asserts that the rule of Wagner Farms does not apply here because, pursuant to section 21167.6, subd. (b)(2), it elected to prepare the record, and CEQA authorizes recovery of costs for record preparation only by a prevailing party who has actually prepared the record. St. Vincent's asserts that "[i]n no reported case has a court awarded costs of record preparation to a party where the other party elected to prepare the record of proceedings." St. Vincent's further asserts that the very purpose of the rule allowing a petitioner to prepare the record of proceedings is to "allow[ ] the petitioner to control the costs of record preparation" and this purpose is frustrated by an award of costs to the City for purposes of record preparation.
We are not persuaded. In the first place, the City is not seeking to recover the entire cost for preparation of the ROP because it did not prepare the ROP, St. Vincent's did. Rather, the question here is whether the City is precluded by St. Vincent's election under section 21167.6, subd. (b)(2) from recovering any costs whatsoever in connection with preparation of the record, even when the City is the prevailing party, and even when the City incurred certain extraordinary costs at St. Vincent's behest. As explained below, we do not think such a blanket preclusion on costs to the prevailing party sits well with the cost-containment policy embodied in section 21167.6.

(a)
The cost-containment policy embodied in section 21167.6 was explained in Hayward Area Planning Assn. v. City of Hayward (2005) 128 Cal.App.4th 176, 26 Cal.Rptr.3d 783 (City of Hayward), a decision issued by Division Five of this Court. There, plaintiffs filed a petition for writ of mandate against the City, alleging noncompliance with CEQA. (City of Hayward supra, 128 Cal.App.4th at p. 179, 26 Cal. Rptr.3d 783.) The developer of the affected project was identified as the real party in interest. (Ibid.) After the City advised plaintiffs regarding the anticipated volume of the record and costs associated with its preparation, the plaintiffs elected to have the City prepare the ROP, pursuant to section 21167.6, subdivision (a). (Id.) However, the City, apparently in order to ensure timely completion of the record, asked the developer's attorneys to prepare the ROP. Plaintiffs were never advised of this arrangement, and the final record was much longer than the City's original projection. (Id.) Subsequently, the trial court denied the writ petition, entered judgment in favor of the City, and awarded both the City and the developer costs. (Id. at p. 180, 26 Cal.Rptr.3d 783.)
*518 The developer sought over $50,000 in costs, mostly associated with preparation of the ROP. (City of Hayward, supra, 128 Cal.App.4th at p. 180, 26 Cal.Rptr.3d 783.) Plaintiffs moved to tax costs on various grounds, including that costs of record production were not properly awarded to the developer because preparation of the record was the responsibility of the City under section 21167.6, subdivision (a). (Id.) The trial court agreed, but rather than denying the developer's costs entirely, it taxed the costs to reflect what costs would have been incurred had the City prepared the record itself, and awarded costs in the reduced amount of $20,359.65. (Id.) Plaintiffs appealed the trial court's decision to award the developer costs. (Id.)
On appeal, the issue was one "of statutory construction: does section 21167.6 authorize the court to award the costs of preparing a CEQA administrative record to a real party in interest absent Plaintiffs' consent?" (City of Hayward supra, 128 Cal.App.4th at p. 181, 26 Cal.Rptr.3d 783.) The appellate court noted that the statute did not expressly bar a real party in interest from recovering costs of preparing the record. (Id. at p. 183, 26 Cal.Rptr.3d 783.) However, language in section 21167.6, subdivision (b)(1) that "the parties shall pay any reasonable costs or fees imposed for the preparation of the record in conformance with any law or rule of court" was ambiguous, the court added. (Id.) On the one hand, "[b]ecause the provision appears in subdivision (b)(1), which authorizes the public agency to prepare the record, it could be construed to permit only the public agency to claim those costs. On the other hand, as [the developer] argues, it can be construed to allow costs to any party because the only express restriction is that costs be awarded in conformance with applicable law." (Id.)
Construing the ambiguity "in a manner consistent with the statutory scheme and purpose," the court observed that "the three-part scheme for preparing the record advances the legislative purpose of enabling the petitioner to minimize the cost of record preparation. When the record is prepared under section 21167.6, subdivision (b)(2), either the petitioner directly controls the costs by its personal assumption of the task or it indirectly controls the costs by consenting to an alternative arrangement. When the agency prepares the record under section 21167.6, subdivision (b)(1), costs are controlled in three ways. First, as occurred in this case, the petitioner may request an initial cost estimate to inform its decision whether to prepare the record itself. That cost estimate serves as a restraint on the agency's ultimate recovery of costs. Second, the agency has a duty to act in the public interest and it is accountable to its constituents for the use of public funds. Had the City here, for example, contracted with [the developer] and assumed responsibility for the costs in the "first instance, it would have been required to file a cost bill in its own name. Third, the agency is bound by the statutory mandate to minimize costs, which the trial court enforces by taxing unreasonable costs. (§ 21167.6, subd. (f).)" (City of Hayward, supra, 128 Cal.App.4th at pp. 183-184, 26 Cal.Rptr.3d 783.)
"In the circumstances of this case," the court concluded, "the cost restraints inherent" in "the statutory scheme for controlling the costs of record preparation" had been undermined in various ways by the City's delegation to the developer of the task of record production. (City of Hayward, supra, 128 Cal.App.4th at p. 184, 26 Cal.Rptr.3d 783.) For example, "[u]nlike a public agency, a developer real party in interest has a strong financial interest in the outcome and is free to act purely in its *519 private interest. Because the City did not directly incur any liability for the costs, it had no incentive to control those costs." (Id. at p. 185, 26 Cal.Rptr.3d 783.) The court further concluded that "[t]he City's delegation of the task to [the developer] also undermined the statutory purpose of expediting CEQA litigation. (See § 21167.1, subd. (a).) As a result of the skewed incentives caused by the delegation, the mounting costs of record preparation did not come under scrutiny until the end of the trial court proceedings. Under the Legislature's scheme, either the plaintiff or the defendant public agency or both would have had reason to control those costs as the record was being prepared, promoting efficiency and limiting the need for time consuming litigation and judicial intervention." (Id. at p. 185, 26 Cal. Rptr.3d 783.) Accordingly, the court held that "in order to preserve the statutory scheme and purpose of section 21167.6, subdivision (b), the public agency must itself incur and seek recovery of the costs of record preparation when the record is prepared under subdivision (b)(1). Because that did not occur in this case, costs must be denied." (Id.)

(b)
City of Hayward supra, is highly instructive in resolving the issue of statutory interpretation presented here, which is: does section 21167.6 preclude an award of costs in favor of the prevailing party in any amount in connection with record preparation if plaintiff elects to prepare the record pursuant to section 21167.6, subdivision (b)(1)? As in City of Hayward the statutory language is ambiguous on this issue, and for much the same reasons. The statute does not expressly prohibit costs under these circumstances. On the one hand, the reference to "reasonable costs" is in subsection (b)(1), which governs the public agency's preparation of the record, so it could be construed to permit only the public agency to claim those costs when it prepares the record. On the other hand, it may not preclude the public agency from claiming costs associated with record preparation even when it did not prepare the record if such an award is "in conformance with" applicable law (§ 21167.6, subdivision (b)(1)), such as Code of Civil Procedure 1032, subdivision (b), which provides that a party who prevails in any action or proceeding "is entitled as a matter of right to recover costs." (Id)
As in City of Hayward therefore, we must decide this issue in light of the statutory scheme to expedite and contain costs in CEQA litigation. (See City of Hayward supra, 128 Cal.App.4th at pp. 184-185, 26 Cal.Rptr.3d 783.) We conclude that under the circumstances presented here, the statutory purpose of section 21167.6 is best served by upholding the award of costs against St. Vincent's in connection with record preparation. St. Vincent's elected to prepare the record pursuant to section 21167.6, subdivision (b)(2). By doing so, it undertook the solemn statutory obligation to "strive [to prepare the record] at reasonable cost in light of the scope of the record." (§ 21167.6, subd. (f).)

(c)
In connection with this litigation, the City assembled 2,208 documents amounting to over 58,000 pages over a period between December 2004 and April 2005. Given the massive amount of documentation involved, the City required, and St. Vincent's stipulated to, three extensions of time to certify the record. The City finally turned over 20 boxes of documents to St. Vincent's in April 2005. St. Vincent's noted that the 20 boxes contained only a few emails, so in June 2005 it submitted a Public Record Act request to the City *520 asking for "all writings evidencing or reflecting communications, stored on computer hard drive or server of any City employee, relating to or in connection with St. Vincent's property or the Silveira property."
This request resulted in further delay. In July 2005, the City advised that over nine boxes' worth of emails would have to be vetted for responsiveness. The parties stipulated to an extension of time through August 2005, so that the City could complete this review. In October 2005, however, the City Attorney's office was still working on reviewing and sorting the emails retrieved as a result of St. Vincent's request. The City's search for emails did not conclude until December 2005, and the responsive, non-privileged emails were then forwarded to counsel for St. Vincent's.
St. Vincent's was not satisfied with the City's production of emails. In a January 9, 2006, case management statement, St. Vincent's stated that "production is incomplete and the City states that it is complete. The parties are attempting to resolve the issue so that the record can be completed." However, on January 11, 2006, St. Vincent's served a Demand for Inspection on the City, listing 15 further demands for documents. In a June 26, 2006, case management statement, St. Vincent's recited the history of its request for emails, stating that because the City did not routinely discard emails from its computer system, it's search had resulted in "nine boxes of potentially responsive emails." However, St. Vincent's continued, the City only "produced two stacks totaling less than two inches of paper. These emails were almost entirely nonsubstantive ... and largely duplicated each other." St. Vincent's recited that it had demanded an explanation as to why the City "withheld[ ] so many emails" and had served a Demand for Inspection. In response, St. Vincent's related, the City had identified five classes of privileged documents and, after a meet-and-confer process, the City had produced a privilege log covering 181 documents. St. Vincent's complained that to date it "has received no explanation for the apparently vast number of emails that have been withheld." St. Vincent's added that on April 26, 2006, it had filed its opening brief on the mandate claims "although the record of proceedings had not yet been certified."

(d)
This record reflects a total disregard for cost-containment on St. Vincent's part, and a complete abandonment of its statutory duty to "strive to [prepare the record] at reasonable cost." (§ 21167.6, subd. (f).) After three extensions of time, the City gave St. Vincent's 20 boxes of documents in April 2005. St. Vincent's then subjected the City to a costly and lengthy process of trawling through its entire computer system in response to an extremely broad and unbounded search for "all writings evidencing or reflecting communications ... relating to or in connection with the St. Vincent's property or the Silveira property." And St. Vincent's rationale for this?not because it had identified any "gaps" in the voluminous planning documents contained in the 20 boxes, but because it was not satisfied with the number of emails contained in the 20 boxes. In abandoning its statutory duty to contain costs, St. Vincent's may be likened to the developer real party in interest in City of Hayward, supra, who, "[u]nlike a public agency, ... has a strong financial interest in the outcome and is free to act purely in its private interest." (City of Hayward, supra, 128 Cal.App.4th at p. 185, 26 Cal. Rptr.3d 783.) Moreover, because St. Vincent's, like the City of Hayward, "did not directly incur any liability for the [additional] *521 costs [of the computer search], it had no incentive to control those costs." (Id. at 185, 26 Cal.Rptr.3d 783.) Furthermore, as in City of Hayward St. Vincent's discovery actions also "undermined the statutory purpose of expediting CEQA litigation." (Id.) The statute provides that the record should be prepared and certified within 60 days (§ 21167.6, subd. (b)(1)), but this record was not certified until July 18, 2006, 15 months after the City delivered 20 boxes of documents to St. Vincent's. It is telling that after all this, St. Vincent's does not mention one single email, obtained in response to its request, which provided information that bolstered any of its claims in this case. Indeed we wonder what the point of it all was, because, as noted St. Vincent's filed its brief before the issue of the emails was ever resolved.
In conclusion, as in City of Hayward supra, the circumstances here demonstrate that "the cost restraints inherent" in "the statutory scheme for controlling the costs of record preparation" have been undermined by St. Vincent's additional, broad, unrestricted, and, apparently nonessential, discovery demands. (Cf. City of Hayward supra, 128 Cal.App.4th at p. 184, 26 Cal.Rptr.3d 783.) St. Vincent's actions, which caused the City to expend considerable time and resources in responding to its discovery demands, reflect a complete abandonment of its statutory responsibility to "strive to [prepare the record] at reasonable cost." (§ 21167.6, subd. (f).) The ensuing delay to the CEQA litigation process caused by St. Vincent's demands also "undermined the statutory purpose of expediting CEQA litigation." (City of Hayward supra, 128 Cal. App.4th at p. 185, 26 Cal.Rptr.3d 783.) Accordingly, we hold that where necessary to preserve the statutory purposes of cost-containment and expediting CEQA litigation, the prevailing party in a CEQA action may recover "reasonable costs or fees imposed for the preparation" of the record, even if the non-prevailing party elected to prepare the record pursuant to section 21167.6, subdivision (b)(2).[9] To hold otherwise would only reward litigants who, like St. Vincent's, elect to prepare the record but then ignore the concomitant statutory duty to restrain costs in doing so. In light of our holding that section 21167.6 does not preclude an award of costs in favor of the City, we will not disturb on appeal the trial court's exercise of its sound discretion in awarding Information Technology fees in the amount of $26,362.50. (River Valley Preservation Project v. Metropolitan Transit Development Board (1995) 37 Cal. App.4th 154, 181, 43 Cal.Rptr.2d 501 "Whether a particular cost to prepare an administrative record was necessary and reasonable is an issue for the sound discretion of the trial court[,]" which the trial court abuses only if its decision exceeds the bounds of reason.)

DISPOSITION
The judgment is affirmed. St. Vincent's shall bear costs on appeal.
We concur: POLLAK, Acting P.J, and SIGGINS, J.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Discussion, Parts A, B and C.
[**] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] Pub. Resources Code, § 21000 et seq.
[2] The only existing road link between the City and the Properties is Highway 101.
[***] See footnote *, ante.
[9] In so holding, we reject St. Vincent's attempt to avoid its statutory duties under CEQA by cloaking its discovery actions under the Public Records Act. St. Vincent's instigated this mandamus action under CEQA and is bound by its statutory provisions.