Filed 10/15/14 Unmodified version attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| COALITION FOR ADEQUATE REVIEW et al.,<br><br>      Plaintiffs and Respondents,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>      Defendant and Appellant. | A135512<br><br>(San Francisco City & County Super. Ct. No. CPF-08-508038)<br><br>ORDER MODIFYING OPINION DENYING REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT[1]:

The opinion filed September 15, 2014, is hereby modified as follows:

1.  On page 3, the third sentence of the fourth paragraph shall be modified to read as follows:
    The court also expressly rejected petitioners' assertion that the City's efforts to supplement the record violated its statutory duty to control record preparation costs, set forth in section 21167.6, subdivision (f).

On page 18, the second sentence of the second paragraph shall be modified to

---

[1]  Before Margulies, Acting P. J., Dondero, J. and Banke, J.

1

read as follows:

> The excerpts were copies of selected materials in the record of proceedings, and were proffered as an aid to the trial court.

Plaintiffs' petition for rehearing and request for judicial notice is hereby denied.

There is no change in judgment.

Dated: _____        _____

                                            Margulies, Acting P. J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| COALITION FOR ADEQUATE REVIEW et al., <br><br>     Plaintiffs and Respondents, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br>     Defendant and Appellant. | A135512 <br><br> (San Francisco City & County Super. Ct. No. CPF-08-508038) |

## I. INTRODUCTION

The City and County of San Francisco (City) prevailed in this California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.)[1] writ proceeding brought by the Coalition for Adequate Review and Alliance for Comprehensive Planning (collectively, petitioners). After securing judgment, the City filed a memorandum of costs totaling $64,144, largely for costs incurred in preparing a supplemental record of the proceedings. Petitioners filed a motion to tax. The trial court granted the motion and denied all costs. The court's reasoning was two-fold: First, it relied on the fact petitioners had elected to prepare the record, themselves, as allowed by CEQA's record preparation statute (§ 21167.6, subd. (b)(2)). Second, it feared sizeable cost awards would have a chilling effect on lawsuits challenging important public projects. Neither rationale is a legally permissible basis for denying record preparation costs to the City. We therefore reverse in part and remand for further proceedings.

---

[1] All further statutory references are to the Public Resources Code unless otherwise indicated.

## II. Factual and Procedural Background

In our prior opinion affirming the denial of petitioners' writ petition on the merits (*Coalition for Adequate Review v. City and County of San Francisco* (June 25, 2013, A131487) [nonpub. opn.]), we discussed at length the land use plans, rezoning, and projects around Octavia and Market streets at issue in this case. We need set forth here only the facts relevant to the City's appeal from the order granting petitioners' motion to tax costs.

### Initial Record Preparation

Petitioners chose to prepare the record of proceedings, themselves, as permitted by CEQA's record preparation statute, specifically, section 21167.6, subdivision (b)(2). The City maintains it thereupon made available some 26,000 pages of material to facilitate petitioners' preparation of the record. Petitioners contend the City, in fact, obstructed and delayed access to these documents and made the process of copying unduly cumbersome and expensive. Petitioners also contend that at 4 p.m. the day before they were, by agreement, to present the record to the City for its review and certification, the City suddenly notified them of an additional 3,000 pages of material and a CD of unknown volume, and claimed it was going to prepare a supplemental record containing these items. The City did not produce this material to petitioners until a few weeks later. Nevertheless, on August 28, 2008, the agreed-upon date, petitioners presented the City with a 30-volume record, totaling 8,306 pages in length.

Two weeks later, on September 12, 2008, the City certified the record petitioners had prepared, but only in part, stating it was incomplete. It appeared to the City that petitioners had omitted documents statutorily required to be in the record under section 21167.6, subdivision (e), and which the City had, at least at some point, made available to petitioners. The City therefore notified petitioners it reserved the right to seek inclusion of any of the additional 21,000-plus pages of material it had produced to petitioners which were not already in the record.

The City then made several attempts to add materials to the record—both through ex parte applications and by negotiations with petitioners. During negotiations, the City

2

proposed augmenting the record when it filed its opposition to the writ petition in order to avoid including unnecessary materials.

As part of a November 19, 2008, case management statement, the City attached an index of its proposed additions to the record, totaling 4,809 pages in 12 volumes. A month later, on December 12, 2008, the City formally moved to supplement the record of the proceedings with these 12 volumes.

Petitioners opposed the motion. They argued they were in control of the record, and the City had no right to make additions. They also asserted the City sought to add irrelevant and duplicative materials, and the proposed supplement was a ploy to raise costs. Petitioners denied having excluded from the record any materials that supported the City's approval of the project.

The City disputed petitioners' contentions about the proposed supplemental record, except for 10 documents which it acknowledged were duplicates or near duplicates of materials already in the record prepared by petitioners. The City also maintained it timely produced most of the required documents, except for certain studies cited in the EIR, which it made available to petitioners after learning of the omission.

On May 12, 2009, the trial court (Judge Feinstein) granted the City's motion to supplement the record, finding petitioners had omitted materials statutorily required to be in the record under section 21167.6, subdivision (e). It disallowed, however, the 10 concededly duplicative documents (approximately 250 pages of the 4,809-page proposed supplement). The court also expressly rejected petitioners' assertion that the City's efforts to supplement the record violated its statutory duty to control record preparation costs, set forth in section 21167.7, subdivision (f). The court noted in this regard petitioners had rejected the City's proposal to file a supplemental record when it filed its opposition to the writ petition and, instead, had insisted the record be fixed before briefing on the merits. The court also ruled "[w]ithout prejudice to the City's ability to seek cost recovery at the conclusion of this litigation, as appropriate, Petitioners shall pay to the City the reproduction costs associated with Petitioners' copy and the court's copy of the City's Supplement." Petitioners moved for rehearing, arguing the immediate order

3

to pay for reproduction costs was improper. In August 2009, the court denied rehearing, concluding the issue of interim reproduction costs had been briefed and properly determined.[2]

### *Document Requests*

In addition to the supplemental record dispute, the parties also sparred over whether certain document requests petitioners made at the outset of the litigation were overbroad and burdensome. Petitioners, for instance, requested production of "[a]ll files relating to all projects, including all proposed developments, public works and building projects and building permits of any kind that are either within the pipeline or not within the pipeline but within the Market-Octavia project area . . . ." (Emphasis omitted.) The City viewed these requests as creating busywork unrelated to the writ petition. Petitioners viewed them as essential to their writ petition, and even without regard to the pending litigation, legitimate under the State's Public Record Act (Gov. Code, § 6250 et seq.) and City's Sunshine Ordinance.

### *Merits Hearing and Cost Proceedings*

Ultimately, the trial court (Judge Sullivan) denied the petition for writ of mandate on the merits. In so doing, the court adopted a lengthy proposed statement of decision prepared by the City. The statement largely cited to the record prepared by petitioners, but made a few citations to the supplemental record.

The City then filed a memorandum of costs, seeking $64,144 for "administrative record, professional messenger, and service." This included $3,231.62 for production (copying, binding, and page numbering) of the supplemental record; $383.32 for production (copying and binding) of a four-volume "excerpts of record;" $804.34 the petitioners had charged the City for a copy of the record they prepared; $50,191.50 for paralegal time; $8,053.14 for City Planning Department time; and $1,480.36 for professional couriers.

---

[2] The City therefore made a demand for $1,764.80 in copying costs. Whether this was paid at the time, or whether it was included in the record preparation costs the City later claimed in its memorandum of costs, is unclear.

4

Petitioners moved to tax costs. They maintained section 21167.6, subdivision (b)(2)—pursuant to which petitioners had prepared the record—precluded the recovery of any record preparation costs by the City. They also specifically objected to the City's claimed costs related to the excerpts of record, paralegal and staff costs, and courier fees, and additionally claimed that, even if allowable, all the costs were unnecessary and unreasonable. In the latter regard, petitioners maintained the supplemental record played no meaningful role in the resolution of the writ petition. The City opposed the motion on all grounds.

Following a hearing, the trial court (Judge Sullivan) issued an order granting the motion to tax and denying all costs. The court concluded petitioners were "not liable" for costs "under . . . section 21167.6(b)(2)," reasoning the City, not petitioners, sought to supplement the record and therefore the City should bear the cost of supplementation. Ancillary to this conclusion, the court concluded petitioners' discovery requests were not "extraordinary" and not the "but for" cause of the City's claimed costs. The court further concluded a cost award as large as the City sought would "certainly chill any desire by members of the general public to seek court review of important civic undertakings," observing petitioners had made neither a frivolous nor bad faith challenge to an "important" project. The City timely appealed.

## III. DISCUSSION

### A. *Standard of Review*

The standard of review applicable to a cost order depends on the issue raised on appeal. When the question is whether a claimed cost comes within the general cost statutes and is recoverable at all, the question is one of statutory interpretation, subject to de novo review. (*Baker-Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 597 [3 Cal.Rptr.3d 593].) Similarly, the interpretation of CEQA's record preparation provisions set forth in Public Resources Code section 21167.6, subdivisions (a)–(f), presents a question of law subject to de novo review. (*Hayward Area Planning Assn. v. City of Hayward* (2005) 128 Cal.App.4th 176, 182 [26 Cal.Rptr.3d 783] (*Hayward Area Planning*).) Whether a cost item was reasonably necessary to the litigation, however,

5

" ' "presents a question of fact for the trial court and its decision is reviewed for abuse of discretion." ' " (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 71 [100 Cal.Rptr.3d 152] (*Gorman*), quoting *Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774 [23 Cal.Rptr.2d 810].)  Similarly, " '[w]hether a particular cost to prepare an administrative record was necessary and reasonable is an issue for the sound discretion of the trial court.' " (*California Oak Foundation v. Regents of the University of California* (2010) 188 Cal.App.4th 227, 293–294 [115 Cal.Rptr.3d 631] (*California Oak  Foundation*), quoting *River Valley Preservation Project v. Metropolitan Transit Development Bd.* (1995) 37 Cal.App.4th 154, 181 [43 Cal.Rptr.2d 501] (*River Valley*).)

## B.  *CEQA's Record Preparation Statute (§ 21167.6)*

Public Resources Code section 21167.6 is one of several statutes spelling out the procedures for challenging a CEQA determination.  (See Pub. Resources Code, §§ 21167 et seq.)  The statute applies to any CEQA challenge, whether brought as a traditional mandamus proceeding under Code of Civil Procedure section 1085 (Pub. Resources Code, § 21168.5) or as an administrative mandamus proceeding under Code of Civil Procedure section 1094.5 (Pub. Resources Code, § 21168).  It addresses both the preparation of the "record of proceedings" upon the commencement of an action (Pub. Resources Code, § 21167.6, subds. (a)–(f)) and the preparation of the "clerk's transcript on appeal" if an appeal is taken from the judgment in such an action (*id.*, subd. (g)).  (See *Madera Oversight Coalition, Inc. v. County of Madera* (2011) 199 Cal.App.4th 48, 61, fn. 4 [131 Cal.Rptr.3d 626] (*Madera Oversight Coalition*) ["[c]are must be taken to distinguish the administrative record (i.e., the 'record of proceedings') from the record on appeal"], disapproved on other grounds by *Neighbors for Smart Rail v. Exposition Metro Line Construction Authority* (2013) 57 Cal.4th 439, 457 [160 Cal.Rptr.3d 1, 304 P.3d 499].)  We are concerned here with the preparation of the record of proceedings.[3]

---

   [3] The "record of proceedings" is often referred to as the "administrative record," regardless of whether the challenge is brought as a traditional or administrative mandamus action.  (*Madera Oversight Coalition*, *supra*, 199 Cal.App.4th at p. 61, fn. 4.)

Section 21167.6 provides flexibility as to how the record of proceedings is prepared. The traditional procedure is set forth in subdivision (a), which provides in pertinent part: "At the time the action or proceeding is filed, the plaintiff or petitioner shall file a request that the respondent public agency prepare the record of proceedings . . . . The request, together with the complaint or petition, shall be served personally upon the public agency not later than 10 business days from the date that the action or proceeding was filed." (§ 21167.6, subd. (a).) The statute also provides for other record preparation options to help reduce record preparation costs. Subdivision (b)(2), thus, provides: "The plaintiff or petitioner may elect to prepare the record of proceedings or the parties may agree to an alternative method of preparation of the record of proceedings, subject to certification of its accuracy by the public agency, within the time limit specified in this subdivision." (§ 21167.6, subd. (b)(2); see generally *St. Vincent's School for Boys, Catholic Charities CYO v. City of San Rafael* (2008) 161 Cal.App.4th 989, 1013–1014 [75 Cal.Rptr.3d 213] (*St. Vincent's School*).)

Additional specifics with respect to the handling of the record are set forth in subdivision (b)(1). It provides: "The public agency shall prepare and certify the record of proceedings not later than 60 days from the date that the request specified in subdivision (a) was served upon the public agency. Upon certification, the public agency shall lodge a copy of the record of proceedings with the court and shall serve on the parties notice that the record of proceedings has been certified and lodged with the court. The parties shall pay any reasonable costs or fees imposed for the preparation of the record of proceedings in conformance with any law or rule of court . . . ." (§ 21167.6, subd. (b)(1).) Subdivision (c), in turn, provides the 60-day period for certification may be extended by stipulation of the parties or by court order. (*Id.*, subd. (c).)

Thus, CEQA's record preparation cost provision, in particular, appears at the end of the subdivision that begins by spelling out an agency's 60-day certification obligation upon being served with a request to prepare the record (§ 21167.6, subd. (a)) *or* upon being provided with a record prepared by the petitioner or party or by some other, agreed-to means (*id.*, subd. (b)(2)). The cost provision, by its plain terms, places the costs an

7

agency incurs in preparing the record on the parties, not the public agency. (*Ibid.*; see *Black Historical Society v. City of San Diego* (2005) 134 Cal.App.4th 670, 677–678 [36 Cal.Rptr.3d 378] (*Black Historical Society*).) The rationale for doing so is that " 'taxpayers . . . should not have to bear the cost of preparing the administrative record in a lawsuit brought by a private individual or entity.' "[4] (*Black Historical Society, supra*, 134 Cal.App.4th at p. 677, quoting *River Valley, supra,* 37 Cal.App.4th at p. 182.)

Accordingly, a petitioner can be ordered to pay for a requested record during the early stages of the litigation, before the merits of the case are ever heard. (See, e.g., *San Diego Citizenry Group v. County of San Diego* (2013) 219 Cal.App.4th 1, 10 [161 Cal.Rptr.3d 447] (*San Diego Citizenry*) [prior to merits hearing, the county "moved for an order determining and directing payment of" record preparation costs; court issued single ruling both denying relief on the merits and ordering reimbursement of record preparation costs]; *Black Historical Society, supra*, 134 Cal.App.4th at pp. 673, 677–678 [when petitioner failed to pay agency's record preparation costs after agency's request that it do so, followed by a court order that it do so, trial court did not abuse its discretion in dismissing case for lack of prosecution].) Indeed, a public agency can refuse to release a record it has been asked to prepare until the petitioner making the request has paid the agency's preparation costs. (*Black Historical Society*, at pp. 674, 677–678.)

This does not mean a public agency can charge a petitioner or party whatever it wants for preparing the record. Section 21167.6, subdivision (f), mandates the "party preparing the record shall strive to do so at reasonable cost in light of the scope of the record." (§ 21167.6, subd. (f); see generally *St. Vincent's School, supra,* 161 Cal.App.4th at pp. 1014–1019 [discussing the "cost-containment policy embodied in

---

[4] In fact, in one of the earliest cases discussing an agency's recoupment of record preparation costs under section 21167.6, the Court of Appeal affirmed the agency's recovery of such costs and the denial of the petitioner's motion to tax, even though the appellate court reversed the decision on the merits that had been in favor of the agency. The trial court had not, however, examined the reasonableness of the agency's claimed costs and was directed to do so on remand. (*Citizens for Quality Growth v. City of Mount Shasta* (1988) 198 Cal.App.3d 433, 447–448 [243 Cal.Rptr. 727] (*Citizens for Quality Growth*).)

section 21167.6"].) A petitioner can also, by interim motion, challenge an agency's record preparation charge as excessive or unreasonable. (See, e.g., *River Valley, supra,* 37 Cal.App.4th at pp. 164, 180–182 [during initial stages of the litigation, petitioner filed "motion to determine the costs of preparing the administrative record"].) Similarly, a petitioner can, by interim motion, challenge a record prepared by a public agency as being incomplete or as including documents not properly part of the record. (See, e.g., *Citizens for Ceres v. Superior Court* (2013) 217 Cal.App.4th 889, 900–901 [during early stages of litigation, petitioner filed objection to certified record claiming city's exclusion of documents on attorney-client and work product grounds was erroneous; appellate court granted interlocutory writ review of trial court's interim order and granted writ relief in part]; *Madera Oversight Coalition, supra*, 199 Cal.App.4th at pp. 63–66 [case management order specified record disputes were to be raised no later than merits briefing; petitioners then filed multiple requests that certified record be augmented, which trial court ruled on at same time it ruled on merits].)

With this overview of CEQA's record preparation statute, we turn to the principal issue on appeal—whether petitioners' election to prepare the record, themselves, under section 21167.6, subdivision (b)(2), precludes an award of record preparation costs to the City.

## C. *A Petitioner's Election to Prepare the Record Does Not Preclude a Public Agency From Recovering Supplemental Record Preparation Costs When Incurred to Ensure a Statutorily Complete Record*

Petitioners maintain the whole point of CEQA's alternative record preparation provisions is to avoid agency preparation costs, and, therefore, their election to prepare the record under section 21167.6, subdivision (b)(2), precludes any award of such costs to the City. The trial court appears to have taken a more nuanced approach and concluded a petitioner's election under subdivision (b)(2) precludes an agency from recovering record preparation costs except in "extraordinary" circumstances like those in *St. Vincent's School.*

In *St. Vincent's School*, the plaintiff also chose to prepare the record. (*St. Vincent's School, supra*, 161Cal.App.4th at p. 1014.) To enable it to do so, the city was

9

required to locate 2,208 documents, totaling more than 58,000 pages, which ultimately took up more than 20 boxes. (*Id.* at p. 1017.) Noting few e-mails were included, the plaintiff filed a Public Records Act (Gov. Code, § 6250 et seq.) request asking the city for "all writings evidencing or reflecting communications, stored on [any city] computer hard drive or server" relating to the property in question. (*St. Vincent's School*, at p. 1017.) This required the city to review nine more boxes of materials. (*Ibid.*) After the city provided copies of all responsive, nonprivileged documents, the petitioner made yet another demand to inspect documents. (*Id.* at pp. 1017–1018.) Before this last set of demands was resolved, the plaintiff filed its merits brief in support of its writ petition. (*Id.* at p. 1018.) After the city prevailed on the merits, it sought and was awarded $26,362.50 in costs incurred in searching its computer files. (*Id.* at p. 1013.)

The Court of Appeal affirmed. It first addressed and rejected the same argument the plaintiffs make here—that because the plaintiff chose to prepare the record under subdivision (b)(2), the city was foreclosed from recovering any record preparation costs. (*St. Vincent's School, supra*, 161 Cal.App.4th at pp. 1014–1019.) The court pointed out the city was not seeking to recover "the *entire cost* for preparation." (*Id.* at p. 1014.) It further concluded disallowing the city's costs would undermine the cost-containment policies embodied in section 21167.6, subdivision (f), and reward the petitioner for abusive document demands. (*St. Vincent's School*, at pp. 1018–1019.) "St. Vincent's actions, which caused the City to expend considerable time and resources in responding to its discovery demands, reflect a complete abandonment of its statutory responsibility to 'strive to [prepare the record] at reasonable cost.' " (*Id.* at p. 1019.) The appellate court thus concluded "section 21167.6 does not preclude an award of costs in favor of the City." (*Ibid.*) It also concluded the trial court had not abused its discretion as to the amount awarded. (*Ibid.*)

We agree with *St. Vincent's School* that the fact a petitioner elects to prepare the record under section 21167.6, subdivision (b)(2), does not *ipso facto* bar the recovery of record preparation costs by a public agency. Subdivision (b)(2) contains no such prohibition. Moreover, that subdivision expressly refers to and incorporates the 60-day

10

period for record certification set forth in the first sentence of subdivision (b)(1). (§ 21167.6, subd. (b)(2).) Thus, the two subdivisions are inter-related. The record preparation cost provision—specifying the parties, not the public agency, are to pay for the record—is, as we have discussed, set forth in the third and final sentence of subdivision (b)(1) and, significantly, does not refer to any particular means by which the record is prepared. (*Id.*, subd. (b)(1).) Finally, as *St. Vincent's School* recognized, the fact a petitioner makes an election to proceed under subdivision (b)(2), does not mean the agency will never, under any circumstances, incur record preparation costs.

The trial court appears to have read *St. Vincent's School* as identifying the only circumstance in which an agency can recoup record preparation costs where the petitioner has chosen to prepare the record under subdivision (b)(2), i.e., where the petitioner has made "extraordinary" production demands purportedly in connection with its preparation of the record. The appellate court did not suggest, however, it was doing anything other than addressing the particular circumstances before it. We therefore do not read *St. Vincent's School* as drawing the bounds of an agency's recovery of record preparation costs where the petitioner has opted to prepare the record under subdivision (b)(2).

There is no question the alternative record preparation procedures authorized by section 21167.6, subdivision (b)(2), are intended to reduce record preparation costs. (See generally *Hayward Area Planning, supra,* 128 Cal.App.4th at pp. 183–184 [discussing cost control provisions of § 21167.6].)

But just as a record prepared by an agency at the request of a petitioner under subdivision (a) must be complete, so, too, must a record prepared by alternative means under subdivision (b)(2). (See § 21167.6, subd. (e); see *Madera Oversight Coalition, supra,* 199 Cal.App.4th at p. 62 ["[r]egardless of which [record preparation] method is chosen, the administrative record is 'subject to certification of its accuracy by the public agency' " quoting § 21167.6, subd. (b)(2)].) When a record prepared under subdivision (b)(2) is incomplete, and an agency is put to the task of supplementation to ensure completeness, the language of the statute allows, and the purpose of the record

11

preparation cost provision to protect public monies counsels, that the agency recoup the costs of preparing the supplemental record.

CEQA is clear about what the record must contain—it "shall include," at a minimum, the documents enumerated in section 21167.6, subdivision (e). (See *San Diego Citizenry, supra,* 219 Cal.App.4th at pp. 26–27 [subdivision (e) specifies the materials "required" to be in the record].) This "language is mandatory—*all* items described in any of the enumerated categories *shall* be included in the administrative record." (*Madera*, *supra*, 199 Cal.App.4th at p. 63; see also *Eureka Citizens for Responsible Government v. City of Eureka* (2007) 147 Cal.App.4th 357, 366 [54 Cal.Rptr.3d 485] ["content of administrative records in CEQA proceedings is governed by . . . section 21167.6, subdivision (e)"].)

We see no reason why parties cannot agree to a smaller (and thus less expensive) record *if* it will provide the court with *all* the materials relevant to the issue(s) raised by the petitioner. (See § 21167.6, subds. (b)(2) ["the parties may agree to an alternative method of preparation of the record of proceedings"], (f) ["party preparing the record shall strive to do so at reasonable cost in light of the scope of the record"]; 2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2014) § 23.73, p. 23-86 ["parties should consider stipulating to exclude extraneous documents from the record"].)

However, where no such agreement is reached, a public agency is not required to put itself at risk of a *statutorily* incomplete record. (See *County of Orange v. Superior Court* (2003) 113 Cal.App.4th 1, 13 [6 Cal.Rptr.3d 286] ["when it comes to the administrative record in a CEQA case, any reduction in its contents is presumptively prejudicial to project proponents," as it is they "who will be saddled with the task of pointing to things in the record to refute asserted inadequacies in the EIR"], italics omitted; *Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 373 [1 Cal.Rptr.3d 726] ["The consequences of providing a record to the courts that does not evidence the agency's compliance with CEQA is severe—reversal of project approval."]; *Madera*, *supra*, 199 Cal.App.4th at p. 75; *Friends of Lagoon Valley v. City of Vacaville*

12

(2007) 154 Cal.App.4th 807, 834 [65 Cal.Rptr.3d 251] ["Because it risked reversal of the Project's approval if the record lacked supporting evidence, Triad properly took pains to ensure the court was provided with a complete record of all relevant proceedings."].)

Here, the City offered to defer supplementation of the record until it filed its opposition to the writ petition, since only then would it know with certainty what additional materials, if any, were pertinent to its defense of the project approval. Petitioners, however, rejected this suggestion and, instead, insisted the record be fixed before they filed their opening merits brief.

Moreover, the City did not unilaterally prepare a supplemental record. Rather, it filed a motion for leave to do so, identifying the documents it intended to include. Petitioners filed opposition, making some of the same arguments they have made in opposition to the City's claimed record preparation costs. The trial court granted the City's motion, but not entirely, excluding from the supplemental record documents that essentially duplicated documents already included in the record petitioners had prepared. As to the documents the trial court allowed, it expressly found they were statutorily required to be in the record under section 21167.6, subdivision (e). The court also expressly found the City's preparation of a supplemental record to include these documents did not violate the City's obligation under subdivision (f) to minimize record preparation costs. In our prior opinion we affirmed the court's supplementation order, including on the ground petitioners failed to carry their burden on appeal to demonstrate error. (*Coalition for Adequate Review v. City and County of San Francisco, supra*, A131487.)

Under these circumstances, we have no trouble concluding the City was effectively put to the task of preparing a statutorily complete record and, therefore, may recover its reasonable costs of preparing the supplemental record.[5]

---

[5] At oral argument, petitioners argued that, in light of their election to prepare the record under subdivision (b)(2), the City improperly moved to prepare a supplemental record and, instead, should have moved for an order directing petitioners to prepare the desired supplement. Petitioners never made this assertion in the trial court. While they

13

The trial court also denied record preparation costs on the ground a sizeable cost award "would certainly chill any desire by members of the general public to seek court review of important civic undertakings." The court's "chill" analysis would pertain to any CEQA challenge, whether brought as a traditional or administrative mandamus case, since both are employed to challenge "important" civic projects. Yet, Public Resources Code section 21168, by referencing Code of Civil Procedure section 1094.5, expressly provides for the prevailing party in a CEQA administrative mandamus proceeding to recover the costs of record preparation. (See *Wagner Farms, Inc. v. Modesto Irrigation Dist.* (2006) 145 Cal.App.4th 765, 772–773 [52 Cal.Rptr.3d 683] (*Wagner Farms*) [discussing fact Code of Civil Procedure section 1094.5, pertaining to administrative mandamus, expressly provides for the prevailing party to recover record preparation costs, but section 1085, pertaining to ordinary mandamus, does not].) Thus, CEQA, itself, refutes a general "chill" rationale to deny record preparation costs to a public agency. (See also *San Diego Citizenry, supra*, 219 Cal.App.4th at p. 11 [affirming agency's request for record preparation costs and quoting trial court's observation that " '[g]roups like petitioner are free to exercise their petition rights, but as has been often said in other contexts, freedom is not free' "].) Furthermore, as we have discussed, section 21167.6, subdivision (b)(1), expressly provides that the parties, not the public agency, are to pay record preparation costs. This *statutory obligation* implements a

opposed the City's motion to file a supplemental record on numerous grounds, they never argued the City was asking for inappropriate relief and never claimed, if the trial court was inclined to allow a supplemental record, they should be the ones to prepare it. Nor do either of the cases petitioners cited at oral argument—*Madera Oversight Coalition, supra*, 199 Cal.App.4th 48, and *Leavitt v. County of Madera* (2004) 123 Cal.App.4th 1502 [22 Cal.Rptr.3d 101] (*Leavitt*)—suggest the City should have sought an order directing petitioners to prepare the supplemental record. As we have discussed, *Madera Oversight Coalition* generally discusses the trial court's power to resolve record disputes. (*Madera Oversight Coalition, supra*, 199 Cal.App.4th at pp. 63–64.) *Leavitt* recognizes a trial court can impose terminating sanctions when a petitioner undertakes but fails to complete the record preparation process, but only if "given an opportunity to comply." (*Leavitt, supra*, 123 Cal.App.4th at p. 1526.) Neither case even suggests a public agency cannot, itself, take action to ensure a statutorily complete record where, as here, the petitioner disputes the agency's assessment that the record is incomplete.

14

different, but equally important policy—that public monies should not be used to fund CEQA challenges brought by private parties. (See *Black Historical Society*, *supra*, 134 Cal.App.4th at p. 677; *River Valley, supra,* 37 Cal.App.4th at p. 182.) This policy is all the more compelling where, as here, a private party loses its CEQA challenge on the merits.

We thus conclude the trial court erred in its interpretation of CEQA's record preparation statute and reverse that portion of the order denying supplemental record preparation costs to the City, and remand for further proceedings.

## D. *Specific Cost Items*

In addition to insisting their election to prepare the record under section 21167.6, subdivision (b)(2), constituted a bar to the City's recovery of supplemental record preparation costs, petitioners also challenged the reasonableness of the City's claimed costs. Because the trial court denied costs entirely, it did not consider the reasonableness of the City's claimed costs. On remand, it must exercise its discretion in this regard. (See *Wagner Farms, supra*, 145 Cal.App.4th at pp. 772–773; *Citizens for Quality Growth, supra,* 198 Cal.App.3d at p. 448.) To provide further guidance on remand, we turn to specific cost items sought by the City.[6]

### *Paralegal Costs Related to Supplemental Record*

In addition to the costs of copying, binding, and page numbering the supplemental record, the City seeks approximately $50,000 for over 300 hours of paralegal time (at a rate of between $159 to $165 per hour) in connection with preparing the supplemental record. The City submitted billing records showing time spent reviewing the record prepared by petitioners for certification, reviewing other materials for inclusion in a supplemental record, organizing those documents, preparing an index, working with vendors on the supplemental record, and meeting with attorneys.

---

[6] Petitioners may not, on remand, challenge the reasonableness of the contents of the supplemental record and contend any of the documents need not have been included. As we have discussed, the trial court long ago determined the materials included in the supplemental record were statutorily required under section 21167.6, subdivision (e), and that determination has been affirmed on appeal.

The City may claim reimbursement for reasonable labor costs required to prepare the supplemental record. (See *California Oak Foundation, supra,* 188 Cal.App.4th at pp. 293–295 [affirming $46,563 in costs for "labor in compiling the record," including paralegal time; university personnel "retrieved, reviewed, organized, and indexed over 40,000 pages of documents"]; *River Valley, supra,* 37 Cal.App.4th at pp. 181–182 [affirming costs for time spent by assistant transportation engineer and paralegal reviewing and compiling documents].)

However, we have been cited no authority, nor are we aware of any, indicating labor costs to review a petitioner-prepared record of proceedings "for completeness" in connection with certification pursuant to section 21167.6, subdivision (b)(1), are recoverable record preparation costs. This sort of review is a chore public agencies face in every case in which the petitioner elects to prepare the record under subdivision (b)(2), and if an agency could always claim a sizeable amount for review "for completeness" or "certification," that would defeat the Legislature's aim of providing for lower-cost record preparation alternatives. (§ 21167.6, subds. (b)(2), (f); cf. *Hayward Area Planning, supra,* 128 Cal.App.4th at pp. 183–186 [denying city's claimed record preparation costs because delegating preparation to real party in interest "undermined the statutory scheme for controlling the costs of record preparation"].) Additionally, record review "for completeness" can easily blur into review for strategy, implicating the kind of attorney fee award neither authorized nor sought here. (See *Wagner Farms, supra,* 145 Cal.App.4th at p. 779 [drawing distinction between time agency employees spent that was "necessary for preparation" of record and time "that went beyond that merely related to prepar[ation]," such as preparing the agency's own case].)

Because the trial court denied record preparation costs entirely, it did not review the City's claimed paralegal costs to determine which of these costs were for work reasonably required to prepare the supplemental record (e.g., locating, copying, indexing, and assembling documents) and are recoverable, and which were for review of the record petitioners prepared "for completeness" and are not recoverable. On remand, the trial court will need to make this determination. (See *Wagner, supra,* 145 Cal.App.4th at

16

p. 779 [where claimed labor costs could not be segregated between time attributable to preparing record and other tasks, matter was remanded for further proceedings].)

### Costs to Retrieve Documents to Prepare Record

The City also seeks approximately $392 for messenger costs for transporting record materials between the City's planning department and City Hall. To the extent these retrieval costs were incurred, as the City asserts, in compiling the supplemental record, we discern no material difference between these costs and other labor costs of assembling the record, and they are recoverable. (*See California Oak Foundation, supra,* 188 Cal.App.4th at pp. 294–295 [affirming costs for retrieving documents "located in many departments throughout the campus"].) But because the trial court denied costs entirely, it also did not review the reasonableness of the City's claimed retrieval costs. On remand, the trial court will need to make this determination. (See *Wagner, supra,* 145 Cal.App.4th at p. 779.)

### Planning Department Labor Costs to Locate Documents Provided to Petitioners

The City additionally seeks $8,053.12 for staff time spent responding to petitioners' request for "all files relating to all projects . . . within the Market-Octavia project area." The City maintains this document request was not reasonably related to petitioners' efforts to prepare the record, themselves, under section 21167.6, subdivision (b)(2), petitioners therefore violated their statutory obligation under subdivision (f) to limit record preparation costs, and the City should, accordingly, recover its production costs under *St. Vincent's School.*

The trial court found, however, petitioners' document request did not approach the egregious abuse that occurred in *St. Vincent's School*, thus implicitly finding petitioners did not "abandon[ their] statutory duty to contain costs." (See *St. Vincent's School, supra*, 161 Cal.App.4th at p. 1018.) The court's determination in this regard is adequately supported by the record. In *St. Vincent's School*, after the city produced 20 boxes of material, the petitioner subjected the city "to a costly and lengthy process of trawling through its entire computer system"—"not because it had identified any 'gaps' in the voluminous planning documents" the city had produced, but because it was "not

17

satisfied with the number of emails" in the 20 boxes. (*Id.* at p. 1018.) Even after the city combed its computer systems, the petitioner remained dissatisfied because the few additional e-mails the city produced were almost entirely nonsubstantive and duplicative. (*Ibid.*) So, the petitioner made yet a further demand. At the same time, it was able to file the record and its merits brief, without ever receiving the supposed trove of e-mails it maintained must exist. (*Id.* at pp. 1017–1018.) Here, in contrast, petitioners made their document request at the outset of the litigation, during the time they were gathering together materials to prepare the record. The trial court reasonably distinguished *St. Vincent's School* and did not abuse its discretion in denying the City's document production costs claimed pursuant to the reasoning of that case.[7]

### Production of "Excerpts of Record"

The City seeks $382.32 for copying and binding a four-volume "Excerpts of Record." The excerpts were copies of selected materials in the record of proceedings, and were proffered as an aide to the trial court. We conclude an "excerpt of record" in a mandamus action can qualify as a photocopy of an exhibit under Code of Civil Procedure section 1033.5, subdivision (a)(13) (allowing costs of "[m]odels and blowups of exhibits" and "photocopies of exhibits" if "they were reasonably helpful to aid the trier of fact"), since it can serve the same purpose—to direct the trial court's attention to material the party maintains is especially relevant. (See *Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49, 59 [136 Cal.Rptr.3d 607] [while "evidence was presented to the jury through audiovisual equipment," party objecting to exhibit costs "overlook[ed] the fact that counsel (for both sides), the witnesses, and the judge all used paper exhibits, in trial binders" without which "it would have been even more difficult to conduct this trial than it already was"].)

---

[7] We therefore need not, and do not, consider petitioners' alternative argument that the City cannot recover its production costs because petitioners sought these documents under the Public Records Act, under which a governmental entity is not entitled to recover production costs.

18

Since the trial court denied costs entirely, it did not review the City's claimed costs of preparing the "Excerpts of Record" and, thus, did not make any determination as to its helpfulness to the court or reasonableness under Code of Civil Procedure section 1033.5, subdivisions (a)(13). On remand, the trial court will need to make this determination.

### *City's Copy of Record Prepared by Petitioners*

The city also seeks $804.35 it paid petitioners for a copy of the record petitioners prepared and submitted to the City. Petitioners state that after they provided the City with their record for certification and submission to the trial court, the City asked to keep it. Petitioners agreed, but charged the City the cost of making another copy for the court.

Code of Civil Procedure section 1033.5, subdivision (c)(4), allows cost items not listed in subdivision (a) "in the court's discretion". (Code Civ. Proc., § 1033.5, subd. (c)(4).) Since the trial court denied costs entirely, it did not review the City's claimed cost of procuring a copy of the record prepared by petitioners. On remand, the court will need to consider the City's claim and exercise its discretion. (See *Wagner Farmers, supra,* 145 Cal.App.4th at pp. 776–777 [affirming trial court's exercise of its discretion in allowing as "reasonably necessary," agency's costs of preparing five copies of record, including copies for itself, its outside counsel and its environmental consultant].)

### *Overnight Service Costs*

The City additionally seeks approximately $1,090 for express delivery, postage costs, and messenger costs for court filings. Postage and express delivery costs are expressly disallowed as costs under Code of Civil Procedure section 1033.5, subdivision (b). (*Gorman, supra,* 178 Cal.App.4th at p. 75.) "Messenger fees," though "not expressly authorized by statute . . . may be allowed in the discretion of the court" under Code of Civil Procedure section 1033.5, subdivision (c)(4). (See *Foothill-De Anza Community College Dist. v. Emerich* (2007) 158 Cal.App.4th 11, 30 [69 Cal.Rptr.3d 678] [costs of messenger court filings].)

Since the trial court denied costs entirely, it did not review the City's claimed messenger costs for court filings. On remand, the court will need to consider this cost item and exercise its discretion.

## DISPOSITION

The order granting petitioners' motion to tax costs is affirmed to the extent it denied the City's claimed costs for responding to petitioners' document request, and for postage and express delivery. In all other respects the order is reversed and the matter remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

_____
Banke, J.

We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.

A135512, *Coalition for Adequate Review v. City and County of San Francisco*

21

Trial Judge:                              Honorable Donald J. Sullivan

Trial Court:                              San Francisco City & County Superior Court

Mary  Miles and Law Office of Alexander Henson and Alexander T. Henson for the Plaintiff and Respondent.

Dennis J. Herrera, City Attorney, Kristen A. Jensen, Susan Cleveland-Knowles and Andrea Ruiz-Esquide, Deputy City Attorneys for Defendant and Appellant.